# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

RYAN CAVANAUGH-STEVENSON,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-2122-LRR

**REPORT AND RECOMMENDATION**

_____

The claimant, Ryan Cavanaugh-Stevenson (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that he was not disabled. Specifically, claimant argues that the ALJ erred in considering whether his mental impairments equaled a listed impairment.

For the reasons that follow, I recommend the District Court **remand** this case for further proceedings.

## *I.*    *BACKGROUND*

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 11). Claimant was born in 1989 and was, therefore, 20 years old on the date of the alleged onset of disability and 24 years old on the date of his application. (AR 15, 23).[1] Claimant earned a high school degree. (*Id.*). Claimant has no past relevant work. (*Id.*).

---

[1] "AR" refers to the administrative record below.

In 2013, claimant filed an application for disability benefits alleging an effective disability onset date of September 5, 2009. (AR 15). The Commissioner denied claimant's disability application initially and on reconsideration. (*Id.*). On August 8, 2015, ALJ Tela L. Gatewood conducted a hearing at which claimant, claimant's mother—Felicia Benka—and a vocational expert testified. (AR 62-96). On November 17, 2015, ALJ Michael D. Shilling conducted a hearing at which claimant, claimant's mother, and a vocational expert testified. (AR 33-61).[2] On December 16, 2015, ALJ Shilling found claimant was not disabled. (AR 15-24). On October 24, 2016, the Appeals Council affirmed the ALJ's finding. (AR 1-5). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On December 15, 2016, claimant filed a complaint in this Court. (Doc. 3). On May 3, 2017, claimant filed his opening brief. (Doc. 12). On June 20, 2017, the Commissioner filed her brief. (Doc. 13). On July 5, 2017, the Court deemed this case fully submitted and ready for decision. On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

---

[2] It is unclear from the record why a second hearing before a new ALJ took place.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his . . . physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. (*Id.*). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work

experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since September 23, 2013, the date of claimant's application for benefits. (AR 17).

At Step Two, the ALJ found that claimant had the following severe impairments: "posttraumatic stress disorder, attention deficit hyperactivity disorder, schizoaffective disorder/depression, learning disorder, not otherwise specified (NOS), and borderline intellectual functioning." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the relevant regulations. (AR 18). In making this finding, the ALJ stated: "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06." (*Id.*). The ALJ did not mention Listing § 12.05.

At Step Four, the ALJ found claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [Claimant] is limited to simple, routine, and repetitive tasks with occasional interaction with co-workers and no interaction with the general public. He

5

retains the ability to adapt to changes in the workplace on a basic level and accept supervision on a basic level.

(AR 19). Also at Step Four, the ALJ determined that claimant had no past relevant work. (AR 23).

Finally, at Step Five, the ALJ found that, considering claimant's age, education, work experience and residual functional capacity, and based on the opinion of the vocational expert, there were jobs that existed in significant numbers in the national economy that claimant could perform. (AR 23-24). Therefore, the ALJ found claimant was not disabled. (AR 24).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).

The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo," *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (citation omitted)).

## V. DISCUSSION

Claimant argues that the ALJ erred "by not even considering Listing 12.05, much less complying with POMS rule DI 24515.056 regarding medical equivalence of Listing 12.05C." (Doc. 12, at 4-9). Claimant also argues that the ALJ erred "in not crediting [claimant's] and his [m]other's statements, on forms and in sworn testimony, without

good reason, and his resulting decision is therefore not supported by substantial evidence." (Doc. 12, at 9-12). I will address each of these issues in turn.

## A.   *The Medical Equivalency of Listing § 12.05*

In the portion of the ALJ's decision addressing whether claimant had impairments or a combination of impairments that met or equaled the severity of a listed impairment, the ALJ stated:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06.

(AR 18).  The ALJ did not discuss Listings § 12.05 or § 12.05C, nor did he address whether claimant's impairments were medically equal to Listings § 12.05 or § 12.05C. At the time of claimant's application, Listing § 12.05C provided:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.  "[T]o meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). "Adaptive functioning" refers to how a claimant learns and uses

8

conceptual, social, and practical skills in dealing with common life demands. It is [a claimant's] typical functioning at home and in the community, alone or among others. Under 12.05A, [the Commissioner] identif[ies] significant deficits in adaptive functioning based on [the claimant's] dependence on others to care for . . . personal needs, such as eating and bathing."

POMS DI 34001.032H(3)(a).

Claimant concedes that he did not meet the requirements in Listing § 12.05(C), but argues that the ALJ improperly failed to make findings on whether the claimant's condition was medically equivalent to the listing. If a claimant's impairments do not meet the severity of the listed impairment, the ALJ must still determine whether the severity of those impairments are medically equivalent to the listed impairment. The medical equivalence regulation states:

> If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter[,] . . . we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b)(3). "Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit Court of Appeals] has instructed that an ALJ should consider the POMS guidelines." *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015) (citation and internal quotation marks omitted).

In this case, claimant had a full-scale IQ score of 74. (AR 524). Notably, there was only one IQ test extant, and it was performed in 2008 when claimant was 18 years old. There was at least some evidence, however, that claimant could meet the other requirements of Listing § 12.05C. Claimant attended special education classes. (AR 38, 73). Claimant was limited in his capability to perform daily living tasks and engage in social functioning. (AR 19). Claimant also had other impairments. The ALJ determined

9

claimant had posttraumatic stress disorder, attention deficit hyperactivity disorder, schizoaffective disorder/depression, and a learning disorder. (AR 18).

Despite these findings, the ALJ's decision in this case did not mention the POMS guidelines for determining medical equivalence, let alone explain why claimant failed to meet the guidelines.[3] This case is similar to the Eighth Circuit Court of Appeals' decision in *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003). There, the Eighth Circuit Court of Appeals found that an ALJ erred when there was "no evidence that the ALJ considered the POMS guidelines" despite evidence that Shontos suffered from "marked disabilities that would interfere with her ability to work." *Shontos*, 328 F.3d at 424-25, 427. Shontos had a full scale IQ score of 72, placing her outside the range required by Listing § 12.05C. *Id.* at 424. Nevertheless, she suffered from anxiety and depression to the extent that her treating medical professionals determined that her ability to perform work was severely limited. *Id.* at 422.

As in *Shontos*, the ALJ's decision in the instant case failed to sufficiently set forth the evidence that claimant's mental impairments, including his IQ, do not medically equal Listing § 12.05C. Indeed, the ALJ ignored Listing § 12.05C and failed to discuss at all whether claimant's limitations met or functionally equaled that listed impairment. This is error. *See Hughes v. Astrue*, 4:11cv1566 JCH TCM, 2013 WL 694962 at *17 (E.D. Mo. Jan. 31, 2013) (ALJ's failure to discuss claimant's earlier IQ scores, vocational counselors' observations, and opinions was error). The Commissioner argues that the record supports a conclusion that claimant's impairments do not equal the limitations under Listing § 12.05. The Court may not consider the Commissioner's new proposed finding that claimant did not meet the required deficits when the ALJ failed to address

---

[3] Claimant argues that this error is "even more serious" because claimant's attorney specifically raised the issue of medical equivalency under Listing § 12.05. (Doc. 12, at 5 (citing AR 66-67)). That argument is inaccurate and misleading, however, because claimant's counsel raised this issue during the first hearing before ALJ Gatewood, not before ALJ Shilling.

the issue in the first instance. *See HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998) ("[A] reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." (citation and internal quotation marks omitted)). The Commissioner simply cannot provide a rationalization on appeal for the ALJ's decision that was not provided by the ALJ. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency [orders].").

"[R]emand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commission's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008). The ALJ here made no factual findings and provided no analysis regarding medical equivalency. Without further explanation, this Court is not in a position to say whether there was sufficient evidence to support the ALJ's decision. *See Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding to the ALJ for further proceedings because it was "not clear from his decision that he even considered whether [claimant] met the requirements for listing 12.05C."); *see also Mahnke v. Berryhill*, 16-CV-60-LRR, 2017 WL 3388183, at * 2 (N.D. Iowa Aug. 7, 2017) (affirming report and recommendation to remand case where the ALJ failed to address whether the claimant demonstrated a medical equivalency to Listing § 12.05C).

The administrative hearing is not an adversarial proceeding. *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). Therefore, an ALJ is obligated to fully and fairly develop the record, even in cases such as this where claimant was represented by counsel. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008); *Battles*, 36 F.3d at 44. *See Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991) (holding that the ALJ did not adequately consider the combined effects of claimant's impairments when the ALJ failed to fully develop the record with respect to his findings). That may include, as here, ordering new tests, such as an IQ test. The only existing IQ test for claimant is nearly a decade

old, and was administered to him when he was still a teenager. Given the centrality of claimant's IQ in determining whether he is disabled, it is appropriate on remand that the ALJ further develop the record by ordering a new IQ test for claimant.

### B. The ALJ's Credibility Findings

Claimant also argues that the ALJ erred in assessing the credibility of claimant and his mother. (Doc. 12, at 9-12). In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (alteration in original) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." (*Id.* (citing *Masterson*, 363 F.3d at 738; *Cline*, 939 F.2d at 565)). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." (*Id.* (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001))).

The underdeveloped record creates difficulty in assessing the degree to which the ALJ's credibility assessment was colored by the ALJ's failure to consider whether claimant's impairments were functionally equivalent to Listing § 12.05C. The ALJ's credibility analysis is intertwined with the ALJ's commentary on claimant's IQ test

results. (AR 22). On remand, therefore, the ALJ should reassess the credibility findings in light of his determination of whether claimant's impairments were functionally equivalent to Listing § 12.05C.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **reverse** the Commissioner's determination that claimant was not disabled, and **remand** the case for further proceedings. On remand, the ALJ shall consider whether claimant's impairments meet or are functionally equal to Listing § 12.05 and shall explain those findings and his credibility assessments. Further, the ALJ shall order a new IQ test for claimant.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 8th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa